UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GLEN A. GAJEWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-185-PPS |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION AND ORDER

Glen Alan Gajewski is appealing the denial of his application for disability benefits, claiming that when the administrative law judge ruled against him, he committed several errors. Gajewski raises multiple arguments on appeal broadly relating to how the ALJ allegedly erred in evaluating Gajewski's mental and physical impairments and their effects. After reviewing the briefing, the hearing transcript and the underlying record, I agree with Gajewski that the ALJ's failure to adequately incorporate Gajewski's moderate limitations in concentration, persistence or pace into the Residual Functional Capacity was in error. As such, I will reverse the ALJ's decision and remand Gajewski's application for further consideration.

## Background

Glen Gajewski applied for Social Security insurance disability benefits and

supplemental security income benefits on September 4, 2015. [A.R. [1] 10.] He alleged that he was disabled and unable to work as of June 1, 2013. [*Id.*] His claims were denied at initial consideration and Gajewski subsequently had a video hearing before an ALJ on October 27, 2017. [*Id.*] On April 3, 2018, the ALJ issued a written decision denying Gajewski's claims which was subsequently affirmed by the Appeals Council. It is thus the decision now before me on review.

The ALJ's decision followed the five-step analytical process that is emblematic of Social Security disability claims. At step one, the ALJ determined Gajewski met the insured status requirements and that he had not engaged in substantial gainful activity since his alleged onset date of June 1, 2013. [A.R. 13.] At step two, the ALJ analyzed whether Gajewski suffered from any severe impairments. He determined that Gajewski had numerous severe impairments, both physical and mental. Specifically, Gajewski has right knee joint effusion; mild multilevel degenerative disc disease; left eye blindness; history of cervical fusion; asthma; myalgia; migraine headaches; chronic obstructive pulmonary disease (COPD); venous insufficiency; major depression; bipolar disorder; and borderline intellectual functioning. [*Id.*] He had additional limitations which the ALJ defined as non-severe, but I need not go into them here, as they aren't at issue in this appeal. [*Id.*]

At step three, the ALJ determined that Gajewski's severe impairments did not meet or medically equal any of the relevant Social Security listings. Once again, a

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 8. Citations are to the page number in the lower right-hand corner of the A.R.

detailed discussion of all of them is unnecessary here, as they are not all at issue on appeal. But in considering Gajewski's application, the ALJ specifically considered listings 1.02 and 1.04 (relating to degenerative joint disease and lumbar spine), listings 3.02 and 3.03 (relating to breathing problems and pulmonary irritants), and listings 12.04 and 12.05 (relating to mental health and functioning). [A.R. 14.]

In analyzing whether Gajewski met the mental health-related listings, the ALJ had to determine the level of Gajewski's limitations across several areas of functioning. He determined he had a moderate limitation in understanding, remembering, or applying information primarily. This was based on his full-scale IQ being assessed at 78 (a little above the threshold of "significantly subaverage intellectual functioning [*see* A.R. 16]), balanced against the fact he was a high school graduate and had performed semiskilled jobs in the past. [A.R. 14.] He determined Gajewski had only a mild limitation in interacting with others because while Gajewski reported he had severe anger problems, he lived with his roommate and generally got along with family, friends, neighbors and others. [A.R. 14-15.] Next, the ALJ determined Gajewski had a moderate limitation in concentrating, persisting, or maintaining pace. This was based on medical records indicating he had "low average ability to sustain attention and concentration." [A.R. 15.] Lastly, the ALJ found he had only a mild limitation in managing himself, as he prepared his own meals, did household chores, and was properly groomed, only sometimes being limited in that regard on account of his physical problems, not mental health. [A.R. 15.] Gajewski was thus at least moderately limited in two areas of functioning, but that is not enough to satisfy any listing.

Because Gajewski did not satisfy any of the specific Social Security listings, the ALJ was next required to formulate his Residual Functional Capacity (RFC), which is another name for stating the maximum work-related abilities that an applicant possesses. To do so, the ALJ reviewed Gajewski's impairments, their effects, and the underlying medical records to explain the RFC which was arrived at.

The ALJ chronicled Gajewski's history of spinal and lumbar issues, which noted increasing degeneration and numerous injection treatments. [A.R. 18-19.] Gajewski testified that his back pain was excruciating and required him to lie down after only a couple hours. [A.R. 41-42, 45, 47.] The ALJ also noted that a venous insufficiency study revealed "moderate to severe reflux of the right and left saphenous vein, although it was negative for deep venous thrombosis." [A.R. 19.] In the end, however, the ALJ discounted the effects of Gajewski's back problems by noting that "the overwhelming majority of the record indicates that the claimant does not appear to be in acute distress or is only mildly distressed" relating to his back. [A.R. 20.]

Concerning Gajewski's pulmonary issues, the ALJ recognized Gajewski had "a long-standing diagnosis of asthma" [A.R. 20.] But the ALJ discounted these impairments and their limitations because Gajewski "rarely mentioned his breathing problems during the hearing, and did not mention any particular pulmonary irritant which exacerbates his symptoms." [*Id.*] The ALJ gave "considerable weight" to the State agency medical consultants who opined that Gajewski would be capable of light exertional level work with additional limitations. [A.R. 21.]

The ALJ also discussed Gajewski's mental impairments. Gajewski testified that

he has had lifelong anger issues and had been arrested more than 20 times relating to his outbursts, although he had gotten better at controlling them as of late. [A.R. 41.] The ALJ noted Gajewski's mental health had not required hospitalization "since his alleged onset date" and that he did not have hallucinations or psychotic symptoms. [A.R. 21.] He further noted that his psychological consultative examination as part of the disability application was something of a mixed bag. His full-scale IQ was assessed at 78 and Gajewski was able to count down from 100 by threes. But he could not count back by sevens. [*Id.*] And while the ALJ acknowledged Gajewski's IQ was 78 (obviously quite low), he found that assessment "somewhat inconsistent with the fact that the claimant has a high school diploma" and presumably assigned lesser significance to it. [*Id.*] The ALJ thus gave considerable weight to the State agency psychological consultants who opined that Gajewski had mental limitations "but that he was still capable of performing tasks." [*Id.*] The ALJ gave little weigh to Gajewski's GAF scores and the opinions offered by his friend concerning Gajewski's activity levels and condition. [A.R. 21-22.]

Given this assessment of Gajewski's impairments and their demonstrable symptoms, the ALJ determined that Gajewski could perform "light work" as defined in 20 C.F.R. § 404.1567(b), with other specific limitations. [A.R. 17.] Those limitations were that he could only lift and carry twenty pounds on an occasional basis and ten pounds on a frequent basis. Further, he could sit for six hours and strand and/or walk for six pours in an 8-hour workday "with normal breaks." [*Id.*] Additionally, the ALJ pointed to other specific limitations which were:

> The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is able to perform tasks that do not require binocular vision and is able to avoid ordinary hazards in the workplace. The claimant can perform job duties that do not require depth perception, such as threading a needle. The claimant can frequently reach with bilateral upper extremities and frequently turn the head to the right or the left and up or down. The claimant can understand, remember, and carryout simple unskilled, repetitive tasks of one to four steps.

[A.R. 17.]

With that RFC in mind, the ALJ next determined that Gajewski could not perform any of his past jobs—tow truck driver, truck driver, and sales clerk—all of which are semiskilled positions and were performed by Gajewski at various exertional levels, ranging from light to heavy. [A.R. 23.] The ALJ then relied upon the testimony of a vocational expert (VE) who testified that someone with Gajewski's RFC (generally limited to unskilled light-work with the additional limitations referenced above) would be able to find work. Specifically, he testified that Gajewski could perform the representative jobs of a garment sorter, a folder, or a mail clerk, all of which are unskilled jobs performed at the light exertional level. As a result, the ALJ concluded that Gajewski was not disabled and denied his application for benefits.

## Discussion

In a Social Security appeal, my role as district court judge is limited. I don't start from scratch and determine whether a claimant is disabled and entitled to benefits. Instead, my job is to review the ALJ's findings to see if they are supported by substantial evidence, and that review is deferential. If substantial evidence supports the

ALJ's factual findings, they are conclusive and will not be disturbed. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); 42 U.S.C. §405(g). The bar for what amounts to "substantial evidence" under the Social Security Act is low—less than a preponderance of the evidence but more than a scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Given this modest standard, the review is not searching, but that doesn't mean a district court may "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that we can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Stated differently, I don't simply review the ALJ's conclusions to see if I agree with them, I further check the ALJ's work to ensure they adequately worked through the claimant's application.

Gajewski raises multiple arguments on appeal relating to how the ALJ evaluated his physical and mental impairments. But I need only address one of these arguments because it is sufficient to warrant reversal. Gajewski's first argument is that the ALJ's RFC determination inadequately accounted for his moderate difficulties in maintaining concentration, persistence or pace. [DE 13 at 3-6.] This is a frequently seen basis for appeal in Social Security disability cases, and for good reason. The Seventh Circuit is emphatic that an ALJ's RFC determination must "explicitly account for all a claimant's limitations in [their] hypothetical, including limitations in concentration, persistence, or pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019) (reversing ALJ's decision for

failing to include moderate limitations in concentration, persistence or pace and mild limitations in understanding, remembering, and carrying out simple instructions in the RFC). "When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). In incorporating these limitations into the RFC, there are no "magic words" or specific terminology the ALJ must include in the RFC to show they adequately considered these issues, but an ALJ must either explicitly incorporate them into the RFC and related hypothetical or satisfactorily explain why they were not be included. *Id.*; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform."). Thus, regardless of how such limitations are specifically addressed when formulating the RFC, "[t]he requirement that the ALJ 'consider' such limitations has certainly been interpreted to mean that a real 'evaluation' of the effect of those limitations on the claimant's ability to work must take place." *Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) (citations omitted). That wasn't adequately done in this case.

The State agency consultants who reviewed Gajewski's file assessed him as having moderate difficulties in maintaining concentration, persistence or pace. [A.R. 91, 121.] The ALJ reviewed those opinions, discussed them, found them to be as consistent

-8-

with the record—specifically giving the opinions "considerable weight"—and incorporating them into the RFC. [A.R. 22.] Earlier in the written decision, when determining whether any Social Security listings were met, the ALJ likewise found Gajewski had a moderate limitation in "concentrating, persisting, or maintaining pace," stating that "[t]his area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate." [A.R. 15.] In finding this, the ALJ noted that his psychological examination summarized Gajewski as having "low average ability to sustain attention and concentration" among other issues. [*Id.*; A.R. 766.]

But then the RFC fails to mention or incorporate these limitations whatsoever. There are no limitations relating to concentration, persistence or pace in the RFC. Nor does the subsequent discussion of how the RFC was arrived at attempt to reconcile the ALJ's prior finding regarding Gajewski's moderate limitation in concentration, persistence or pace, or the similar finding made by the State agency psychological consultants who roughly found the same. At most, the ALJ stated that Gajewski "can understand, remember, and carryout simple, unskilled, repetitive tasks of one to four steps." [A.R. 17.] But as the Seventh Circuit has repeatedly and emphatically stated that "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump*, 932 F.3d at 570. "[E]mploying terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. Instead, the Seventh Circuit

has provided that as a matter of best practice, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 620–21.

The record contained evidence of Gajewski's issues concentrating and maintaining focus. He testified he was on multiple prescription medications, including those for his back pain, and they made him drowsy. [A.R. 45, 53-54.] He testified that he needed to frequently lie down because of his back pain and drowsiness. Likewise, the psychological consultative examiner noted that Gajewski was visibly fatigued at the conclusion of the exam. [A.R. 762.] This was the examination which concluded that Gajewski's full-scale IQ was 78. [A.R. 765.] Furthermore, the State agency consultants (again which the ALJ afforded "considerable weight" to) included specific "check-box limitations" that Gajewski was moderately limited in his ability to maintain attention and concentration for extended periods; moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and moderately limited in his ability to perform as a consistent pace without an unreasonable number and length of rest periods. [A.R. 94, 125.] But that evidence is not accounted for in the RFC and resulting hypothetical that the ALJ posed to the VE.

Nor can the ALJ's written decision be saved by looking only at the State agency consultant's "bottom line" conclusions, which stated that Gajewski "appears capable of performing at least unskilled work activities on a sustained basis without special considerations." [A.R. 95, 126.] While "an ALJ may rely on a narrative explanation" to

form the RFC, if they do that, "the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms[.]" *DeCamp*, 916 F.3d at 676 (citing *Yurt v. Colvin*, 758, F.3d 850, 859 (7th Cir. 2014). That didn't happen here.

Finally, given this evidence in the record, it cannot be said that the ALJ's error was harmless, as the Commissioner argues and the Seventh Circuit held in *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("Because Jozefyk did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand."). Here, there was both testimony from Gajewski and underlying medical evidence that showed his shortcomings in his concentration, persistence and pace. When that is the case, the error cannot be harmless. *See Crump*, 932 F.3d at 571 ("[M]edical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations. And, unlike in *Jozefyk*, Crump testified consistently with the medical treatment notes about … her ability to concentrate well enough to work for a sustained period.").

## Conclusion

For the foregoing reasons, the ALJ's written decision is REVERSED and this matter is REMANDED for further consideration. At that time Gajewski can raise his argument relating to the need for some expert medical assessment of the impact of the venous insufficiency study and any other necessary arguments unaddressed by this opinion.

-11-

SO ORDERED on August 24, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT